DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas that found appellant guilty of one count of rape and sentenced him to a prison term of nine years. For the reasons that follow, the judgment of the trial court is affirmed.
 {¶ 2} Appellant sets forth the following assignments of error:
 {¶ 3} "I. Defendant's conviction was not supported by sufficient evidence.
 {¶ 4} "II. The sentence was contrary to law."
 {¶ 5} On January 28, 2005, appellant was indicted on one count of rape in violation of R.C. 2907.02(A)(2). Appellant entered a plea of not guilty and the case was heard by a jury on May 3, 2005. The jury returned a verdict of guilty, appellant waived his right to a presentence investigation and report, and the case proceeded directly to sentencing. The trial court imposed a sentence of nine years, to run concurrently with another sentence appellant was serving in case no. CR03-1276. In its judgment entry filed May 6, 2005, the trial court found that appellant had been classified as a sexual predator on April 29, 1998 in case no. CR97-2554, and had been advised by the trial court in that case of his duties to register. Appellant filed a timely appeal.
 {¶ 6} In his first assignment of error, appellant asserts the jury's verdict was not supported by sufficient evidence. Appellant argues that there was no direct evidence linking him to the rape of Tamara Pitzen on December 1, 2004.
 {¶ 7} The Supreme Court of Ohio has defined the proper standard of appellate review in examining a criminal conviction based upon an alleged failure to meet the "sufficiency of the evidence" standard. A reviewing court must determine whether the evidence submitted was legally sufficient to support the elements of the crime. State v. Thompkins, 78 Ohio St.3d 380, 386-387,1997-Ohio-52. The reviewing court must determine whether a rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt when viewing the evidence in a light most favorable to the prosecution. State v. Jenks (1991),61 Ohio St.3d 259, paragraph 2 of the syllabus. As this court has consistently affirmed, the trier of fact is vested with the discretion to weigh and evaluate the credibility of conflicting evidence in reaching its determination. It is not within the proper scope of the appellate court's responsibility to judge witness credibility. State v. Hill, 6th Dist. No. OT-04-035,2005-Ohio-5028 at ¶ 42 .
 {¶ 8} R.C. 2907.02(A)(2) states: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 9} The victim, Tamara Pitzen, testified she has known appellant for three years and lived with him in Swanton, Ohio, from October 2002 until July 2003, when she moved to Toledo. Pitzen saw appellant occasionally after she moved. She recalled going to his house sometime close to Thanksgiving 2004, to visit his children. Pitzen further testified appellant came to her house at about 5:00 or 5:30 in the afternoon on December 1, 2004, and appeared intoxicated. When appellant told Pitzen he wanted to start seeing her again, she said that was not going to happen. He then told her he wanted to die. Pitzen went upstairs into her bedroom and appellant pushed her onto the bed and began yelling at her. Pitzen got up and he pushed her. She then went downstairs and they continued to argue. Appellant held her down on the sofa and held her by the throat while she struggled to get up. Pitzen testified that he told her he wanted her to tell their friends that he raped her and beat her and she said she would not lie about that. He then told her he would do it anyway. Pitzen further testified appellant told her if she went to the police he would kill her and her family. Appellant then ripped her clothes and raped her. Pitzen stated appellant told her he was not going to leave any "evidence." She described the struggle as lasting for approximately an hour and one half. During that time, appellant told her he loved her and she would "always be his."
 {¶ 10} After appellant left, Pitzen showered. She did not call the police because of appellant's threats. Pitzen then talked to some of her friends about the assault, one of whom drove Pitzen to the police station the next day. After she talked to an officer, Pitzen went to the hospital, where she was examined by a sexual assault nurse. Pitzen had bruising, some bite marks on her chest and neck, and tenderness in her groin area.
 {¶ 11} Pitzen further testified she saw appellant in court on two occasions. Both times, appellant asked her not to pursue the charge against him because he would lose custody of his daughter.
 {¶ 12} Pitzen's son, Terry, testified that when he came home that evening at approximately 7:00 p.m., appellant was there with his mother. Terry and appellant talked for a few minutes and appellant left. Terry testified he noticed his mother's shirt was torn and asked her what was wrong. He stated his mother then told him appellant had raped her. Pitzen's friend Dawn testified that she drove Pitzen to the police station because she was upset and very sore. The officer who interviewed Pitzen at the police station testified that Pitzen was shaking, withdrawn and emotional while she described the incident. The state also presented the testimony of Tashonda Greenwade, the nurse who examined Pitzen after the assault. Greenwade testified she noted some red marks on Pitzen's side, scratches on her arm, and a bruise on her buttock. During the pelvic exam, Greenwade noted some abrasions and a positive "dye uptake." She explained that the dye is applied to the vaginal area and adheres to any abrasions that might not be visible to the naked eye. In Pitzen's case, the dye indicated abrasions. The nurse testified her observations and Pitzen's complaints were consistent with vaginal penetration by force. She stated Pitzen told her appellant did not ejaculate during the assault. The forensic scientist who examined the contents of the rape kit testified she did not detect semen on any of the items.
 {¶ 13} The state rested and the defense presented several witnesses. Attorney Fred Burkholder testified that when he was in Toledo Municipal Court with appellant on one occasion he saw Pitzen enter the building, walk up to appellant, smile and speak to him. He stated Pitzen touched appellant "in an embracing manner" and did not appear intimidated. Frank Pion, appellant's friend, testified that appellant was living with him on December 1, 2004. He further testified that when he arrived home from work that day Pitzen was there with appellant.
 {¶ 14} The state presented rebuttal witness Sharon Lindhorst, who testified she knew Pitzen and appellant from her former job at a local bar. Lindhorst recalled appellant coming to the bar around 12:30 p.m. on December 1, 2004. She testified she recalled the events of that day because it was her last day at that job. Lindhorst testified appellant had one beer, a shot of tequila and then another beer. He then became loud and started "ranting and raving" about Pitzen sending people "after him." Lindhorst refused to serve appellant any more shots after that. She recalled serving him a total of two shots and four beers that afternoon. When Lindhorst left between 3:30 and 3:45 p.m., appellant had gone.
 {¶ 15} This court has thoroughly considered the entire record of proceedings before the trial court. We note that appellant presented the testimony of his friend Pion that appellant was home the afternoon of the assault. This testimony was contradicted, however, by that of bartender Lindhorst, who testified she recalled appellant being at the bar from approximately noon until 3:30 p.m. on December 1, 2004. It was further contradicted by the testimony of Pitzen's son, who stated that when he arrived home at approximately 7:00 p.m. that day appellant was there with his mother, who was visibly upset. The jury chose to attach greater credibility to the testimony given by Pitzen's son and Lindhorst than to that of Pion.
 {¶ 16} Accordingly, upon consideration of the evidence and the law, we find that the evidence presented to the jury, when viewed in a light most favorable to the prosecution, was legally sufficient to prove the elements of the offense of rape as set forth in R.C. 2907.02(A)(2). Appellant's first assignment of error is not well-taken.
 {¶ 17} In his second assignment of error, appellant asserts his sentence is contrary to law because during the sentencing phase the trial court did not address the issue of his sexual offender classification. This claim is without merit. Appellant accurately states that the trial court did not address the issue of sexual offender classification at his sentencing hearing. The trial court did note, however, in its judgment entry that as a result of appellant's 1998 conviction in case no. CR97-2554, he was classified as a sexual predator. That classification carries with it a lifetime duty to register and otherwise comply with R.C. 2950.09, unless the court later finds that the offender is no longer a sexual predator under R.C. 2950.09(D)(1). Appellant's prior classification remains as imposed; making a finding on the record in this case that appellant is a sexual predator would be redundant. Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 18} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial. The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Singer, P.J., Parish, J., concur.